Could you call the next case, please? 3-13-0204 Bank of America N.A. Appellate Activity Content v. Period of America Basile Accounts by Theodore Werthwein Mr. Werthwein, good morning. Good morning. May it please the court, counsel. I'm always stuttering when it gets my name right. Your Honor, we represent the Basiles. We're here because we do not believe summary judgment should have been entered against the Basiles by Judge Siegel, nor upheld on our motion to reconsider. At that time, defendants' affirmative defenses were before the court. First, the affirmative defenses were never withdrawn. Second, affirmative defenses may be raised in summary judgment even if they have not been pled. Both parties have cited a case law which agree on this important point. Well, if you raise affirmative defenses at a hearing on summary judgment, you've got to come forth with evidence in support of that, right? You can't just say I've got an affirmative defense. You've got to have evidence in support of that affirmative defense. We, at summary judgment hearing, we did. We had affidavits from Mr. Basile, and we had affidavits from Mr. Grossman, both pointing out that there had in fact been a rescission. In addition, at the time when you're raising this affirmative defense at summary judgment, I believe you're allowed to plead that and then move forward with it. At no time were we ever given an opportunity to file affirmative defenses at or after summary judgment by Judge Siegel. And so there was nothing that we could do since all we were trying to do was present them. I didn't get past the point of trying to present my affirmative defenses in answer at that time. Have I? Yes. Okay. With respect to the summary judgment that was granted, first of all, as I just said, there were in fact affidavits in front of the court from Mr. Basile that stated there was a rescission outstanding. There was an affidavit out there from Mr. Moran which stated that Bank of America was not the owner, that the owner was in fact Danny May, that there was at a later time a request to admit, which came up, and said that Bank of America was the servicer and not the owner. Now that point was then conceded by Ms. Collins on the date of the summary judgment argument, March 21st, age 97, when she said, Your Honor, I don't dispute the fact that Danny May owns the loan and that Bank of America is bringing this action as the servicer of the loan and has every right to do so. Let me ask you, can you say you rescinded a contract while you're keeping the benefits of the contract? Can you just say, I rescinded that contract, but you're still holding on to the benefits of the contract? Your Honor, I believe that when it comes to rescission, if that's the concept we're going to, that's where I'm going. Rescission under TILA requires you to give notice of rescission. You don't get to hang on to both. At some point, if you're rescinding, you need to pay that back, and I've seen that payback done in a number of different ways. I've seen some courts require it in full. I have seen some courts require payments over time. I've seen some courts just say, work it out. So, no, you don't get both the house and the money on either side. You don't get to be the bank and keep what you have, plus get the house. If you're the basils, obviously you don't get to stay in the house without paying, but you do have to give the notice as the first step, and then they... I'm sorry, Your Honor. Well, the basils haven't made a payment since February of 2008. I believe that's correct, Judge. Nevertheless, what they're required to do is to give the notice of rescission, and then you step into an area of rescission where you move forward. Essentially, once you give that notice, according to the Illinois case we cited, the security interest is detached from the note. Was the basis for the rescission... It was stated two different ways in the materials. Was it that there was no notice of right to cancel or an inadequate number of notices of right to cancel? Judge, my understanding is that from the affidavit of Mr. Grossman they didn't receive the notice. Numbers of these things, when they're done, when people were closing their houses during this period of time, one side would have one set of documents, another side would have a totally different set of documents. So that if you were the purchaser, you wouldn't have a full set of documents, and you might not have any copies of a certain thing. Okay. Thank you. Yes, ma'am. So we have the notice of rescission. We also have affirmative defenses which are out there, and we have affirmative defenses which strangely are put into the summary judgment motion by the plaintiff in its summary judgment motion. I don't believe they ever withdraw those affirmative defenses and answer. Now I also realize that that's the 2009 answer and affirmative defenses which were in fact withdrawn by the court, which were in fact withdrawn in court order. But here we have the plaintiff coming out in its motion for summary judgment and saying there is an answer and affirmative defenses on file to which we respond and to which we file affidavits along with attacking their motion. Nevertheless, that's out there and then all of a sudden when they come to do their reply, I don't know whether they realize that they made a mistake. I don't know whether they think that they had a tactical advantage and now they're moving away from it. I don't know if the way they move, they're thinking that they're giving themselves a tactical advantage. Nevertheless, Judge Siegel decides, the court decides, that that's not an affirmative defense for purposes of the motion for summary judgment. We also have the October 2010 issue where Wythwein Miller just comes into the case that day. There is a motion to strike and we get leave to withdraw the affirmative defenses and the answer and we get leave to file our appearance. We move forward and we file our appearance. When I get back to the office, I look at it and I decide that there's nothing better that I'm going to do with the affirmative defenses and the answer is already out and we leave that. You said in court, I believe, that it fell through the cracks in your office. Yes, Judge, I do use those words, it fell through the cracks. But that what falls through the cracks is I don't get on top of that and I don't get discovery out. I don't get my document requests and I don't get my interrogatories out. And ultimately I don't get those out until after the motion for summary judgment is filed. I don't think I would have put out a request to admit at that time, but I'm behind and I never catch up and I never get answers to the motion, I never get answers to my documents, which I don't know what documents are out there, they never get produced. I don't get answers to the interrogatories I have. I don't know what they would be, they never get answered. All that got answered along that line was my request to admit, which pop up and say, yes, Danny May is an owner, just as we said with Mr. Moran's lookup. So I would have been a lot better off and perhaps a lot quicker in what I did if I had gotten that discovery out. That's a screw-up in the office, but it's a discovery mess that falls through the cracks as far as when you look at the affirmative defenses that are out and the answers that are out, they're just fine. They're certainly enough to go through and thwart a motion for summary judgment. Okay. Just let me clarify one other thing. In the brief, Bank of America says that the reason why they attached the 2009 pleading was because only the affirmative defenses had been stricken and not the answer. Is that correct? I have no idea, Judge. I have no idea why they did that. If that's the question you're asking, it's probably not the question you're asking. No, the question is, was it only the affirmative defenses that were stricken and not the answer? I'm not aware of it. I can take a look into the orders. Well, and about those affirmative, when you file a motion for leave to withdraw a plea and the court says, okay, granted, it's withdrawn. They don't wait for the moving lawyer to go into the court file and actually pull the document out because they stay in the file. It's a fait accompli. They're withdrawn when the court grants a motion asking for leave to withdraw them. Well, Your Honor, we cited the case law, which says that essentially when you're moving for a leave, it's your moving to ask permission. Certainly, it's not a fait accompli when the court granted my motion for leave to file an appearance. I had to go and file that appearance. Had I not filed that appearance, I wouldn't have been able to go ahead and proceed as an attorney. Agreed, but in that case, there was no appearance. There wasn't one already on file as opposed to this pleading that had already been filed. You're asking for leave to withdraw it. I mean, you don't physically take it out of the file. It's always going to stay there as part of the record. It doesn't disappear from the court record. It's just withdrawn. Your Honor, again, I believe that the case law here says it's permissive as to what's going to happen, and it's permissive to the person who has been granted the leave to do it. Of course, whether it's a verified pleading or unverified pleading or a notice of filing, Thank you. It's going to stay with the clerk. It's always going to be in the court file. What we're talking about is the permission to withdraw it. Do we have permission to withdraw it? Yes, we do. Do we have to exercise that permission? That's the issue I think is here. I don't believe that the cases say we have to exercise that permission. We can go ahead because it's perfectly fine. Affirmative defense in answer. The case law that you cited, was it specific to leave to withdraw, or was it just case law about leave? It was case law about someone being granted leave to file a motion, a new 304A, or something which would affect a 304A. The court was going in and also explained its view of what leave meant, and that leave for these purposes was not something that was final, or it was not something that was new. It was just something that was permissive, and therefore they didn't lose their appeal. Did you find a case that related specifically to leave to withdraw? No, Judge. I've never found a case that relates specifically to leave to withdraw. I've found, and we put it out to you, that the dictionary definition is such and such, but quite clearly this is different in this case from the earlier motion, which was met with an order that said the affirmative defenses are withdrawn. Here it's clear that that's not what we're doing. We're not withdrawing them. There is an argument of, well, that doesn't make sense. Let me just ask you. I mean, I practiced a lot of law for 20 years in the civil arena. Why in the world would you file a motion for leave to withdraw something that you didn't want to withdraw? I didn't file a motion, Judge. This was the first time. I didn't mean you, but why would anybody file a motion for leave to withdraw something that they didn't want withdrawn? And for time to file a substitute. Well, what I'm saying is I came in, I looked at these things, and I wasn't sure what I wanted to do. And so I did ask for leave to withdraw, which is what's down there. I didn't believe that by asking for leave to withdraw rather than withdrawing them, I was, in fact, saying I'm withdrawing them. I'm saying, okay, I get leave to withdraw, and I also get 28 days if I want to come in and do something different and file another affirmative defense, perhaps a counterclaim, and certainly file a different answer. That's what all of that did. It didn't say I had to. Why wouldn't you just wait until you knew what you wanted to do and then file a plea? I've been in front of Judge Siegel a number of times. It relates back over a number of years. This was an agreement between counsel and I that I would have leave to look at it. Judge Siegel has been known on occasion, cases that I've been in, to rule summarily on something that was up in front of him. And so I didn't want to take a chance on him and have him rule. I don't know which way he's going to go, but normally when I'm on the side of the person who's being foreclosed against, whether it's a homeowner or a business, I've not found all of his rulings to go my way. So I wanted to get that out of the way, and I wanted to get that out of the way in a way where I didn't have to subject myself to the vagaries of a potential rule and then have to fight against that, that you're bringing this thing again. You already brought it. I already ruled against it. That's why I did that, Judge. Mr. Ruthline, your time is up. You'll have five minutes for rebuttal. Thank you very much. Thank you. Ms. Coddington, good morning. Good morning. Your Honors, good morning, counsel. My name is Phoebe Coddington of Winston and Strawn. I represent Bank of America, N.A., in this matter. Sometimes I might refer to it as BANA, which is our short form for Bank of America. This appeal has a lengthy and convoluted procedural history, which you were discussing with counsel previously. It boils down to one question. Did BASEL ever present affirmative defenses in such a way that was in front of the court? I think the answer is clearly no. You had asked about what the first order said about the 2009 affirmative defenses. The order at C-148 says, defendant withdraws all previously filed affirmative defenses. So the fact that the answer might have been attached to BANA's motion for summary judgment as an answer without ever saying anything about the affirmative defenses makes sense, because that's the only answer that was left on file, if anything. I think the point of that allegation in the motion for summary judgment for BANA's counsel was simply that defendant has made an answer in this case, has appeared, and summary judgment is still warranted under these circumstances. Is that what he announced orally? Did the written order follow that same language? The written order says, defendant withdraws all previously filed affirmative defenses. Of the 2009 one, the 2010 withdrawal was the motion for leave has been granted to counsel to refile. So the two orders are different, but my point in pointing out the first order that talks about the affirmative defenses was to Justice McDade's question as to what did that order say. Did it say the answer was withdrawn or just the affirmative defenses? And it was just the affirmative defenses that were withdrawn at that time. Also, on page R-42 of the record, counsel, the reason why the 2010 were up before the court was because Bank of America had filed a motion to strike the 2010 affirmative defenses. That was the motion in front of the court. Now, counsel talked beforehand and had agreed upon his entry into the case that he wanted leave to refile any answer in affirmative defenses at that time. And so he says, and that's what was done. So he says later on the February 15th hearing in 2012 in front of the court that we filed a motion for leave to withdraw the answer in affirmative defenses, which I don't think is accurate under the procedural history because it was up on Bank of America's motion to strike the affirmative defenses. In the end of October, that motion was granted. We were given 28 days to answer, otherwise plead. End of December, let me say the other part, which is it fell through the cracks and we didn't do it. He just didn't file the answer within the 28 days and instead has tried to rely on the fixture of the 2009 affirmative defenses as an attachment to Bank of America's summary judgment as somehow reviving the previously withdrawn affirmative defenses. Also, on February 22nd, 2010 on R62, counsel admitted to the court that he didn't file any affirmative defenses. So I think it's clear here that counsel never filed any affirmative defenses and all the prior ones were withdrawn. Also, the point that Basil can raise affirmative defenses at summary judgment, I think Justice Smith's point was clear that even if they're presented in summary judgment, you do have to present facts. You have to present evidence that would go to the other side's prima facie burden, which didn't happen here. Bank of America met its burden of showing that it was able to foreclose and nothing that Basil submitted at that time went to that prima facie burden. Also, the case law that he relies on for the proposition that you may raise affirmative defenses at summary judgment may be true under some circumstances. And I believe those circumstances are where the court has found it necessary to excuse the party's failure to properly plead affirmative defenses under the rules of civil procedure and where the party against whom the affirmative defense is being brought doesn't object. But here, Bank of America objected at every instance possible when the affirmative defenses were brought up at summary judgment, both in the reply brief and the cert reply and in oral argument over and over and over again, to the motion to dismiss, to all the motions to reconsider. At every opportunity, Bank of America objected to any bringing up of affirmative defenses that were not properly pled. So under the circumstances that I believe counsel relies on for that proposition does not meet here. There's no circumstance where the rules of civil procedure should be let go under these circumstances. The court properly found that the affirmative defenses were waived because they were not properly filed. The Horitz case that was brought up in the briefing is also instructive. In that case, the plaintiff argued that the defendant had waived an affirmative defense by failing to plead it, as Bank of America does here, and the defendant's answer, and that the defendant was precluded from raising it at summary judgment. The trial court rejected plaintiff's contention and found that she had not been prejudiced by the raising of the affirmative defense at summary judgment. But the appellate court determined that it was in the trial court's discretion to allow a defendant to bring that affirmative defense. Here, the trial court used its own discretion to determine that Basil had withdrawn the affirmative defenses and they weren't properly before the court. And there's nothing that Basil has pointed to to show that the court abused its discretion in denying the ability to bring those affirmative defenses during summary judgment. The affirmative defense of standing was also brought up to the court, which was different from the previous affirmative defenses that had been filed. That was kind of new in counsel's argument, both in the motion to dismiss and in some of the response briefs to the Bank of America summary judgment motion. And that issue was decided on the merits multiple times, both in the context of the court looking at the motion to dismiss, where it determined that Bank of America did have standing to proceed, and also in the briefing for summary judgment and thereafter. There was no genuine issue of material fact related to standing. The fact that there might be two parties that might qualify under the legal definition of a mortgagee is not a factual dispute. It's a legal determination of which the court decided that they fell within the legal determination of a mortgagee and that the pleading was proper. Further, the plaintiff has the burden of proving that the plaintiff, the defendant has the burden of proving that the plaintiff does not have standing. Here, it's not the plaintiff's burden to prove that it does have standing. The Rose Stone Investments case, 2013, Westlaw 6530767, the first district, contains some instructive language there, where the court found that summary judgment was appropriate, where defendants had raised the issue of lack of standing, because it was defendant's burden of pleading and proving the plaintiff's lack of standing, which it did not do in that case, nor here. A mere challenge to the plaintiff's holding of the note, as Basil attempts to do, did not negate the strong evidence of standing presented by the plaintiff when the complaint was filed. The court said, indeed, the evidence presented strongly indicates that the plaintiff had a legal interest in the mortgage at the time the complaint was filed. The plaintiff attached copies of the note and mortgage to its complaint. Again, the mere attachment of the note to the complaint is prima facie evidence that the plaintiff owns the note. Additionally, the copy of the note attached to its motion for summary judgment displayed a blank endorsement. A note endorsed in blank is payable to the bearer. Plaintiff's production of the note showed that it had an interest in the mortgage. Plaintiff's also attached to its motion for summary judgment an affidavit who averred that the plaintiff was the holder of the note, which is very similar to the circumstances here. Finally, I'll just point out that Basil's motion to amend and add the affirmative defenses after summary judgment, the court's decision denying that was not an abuse of discretion, which is the standard here. The court should not reverse a lower court's decision with respect to motions to amend pleading unless the court has manifestly abused its broad discretion. And here, we agree with the four-factor test, the Loyola test that the court needs to look at, but we disagree with the application of it. Here, allowing Basil to amend would not cure the defect of pleading. In fact, twice previously when those affirmative defenses were filed, Bank of America filed a motion to strike because they were legally insufficient. If the affirmative defenses were allowed to go forward or he's allowed to amend, we'd just go back through that cycle again and again and again, and then maybe he would withdraw it again when he was against a motion to strike. So the amendment would not have cured the defect of pleading because counsel has admitted that it was going to be substantially the same as the last two. So I would submit that it would have been the same defect of pleading as prior and thus wouldn't match the first prong of the Loyola standard. Also, on Record 32, the court indicated that there was a high probability of the affirmative defenses being struck. And while it's not a finding on the merit to the affirmative defenses, the court did indicate that in the motion to dismiss hearing to Mr. Basil or into a hearing to Mr. Basil that those affirmative defenses did have some legal insufficiencies that the court would look at at a later date. Also, the proposed amendment would be prejudicial to BANA. It had waited a very long time to bring this foreclosure, and all of these mechanisms kept delaying and delaying. And mere delay is not enough. I mean, there was a lot more going on. The substantive fact that Bank of America wouldn't have been able to challenge these affirmative defenses is prejudicial to Bank of America. And also, the proposed amendment was not timely. It had multiple chances to get this on file, and they were on file, and then voluntarily withdrawn. So the failure to do what the court ordered him to do, which was file within 28 days of the order, is also meaning that anything later after summary judgment is not timely. And finally, Basil did have plenty of opportunities to amend and took those opportunities previously. So we would just submit that the court's orders denying the motion to amend should be affirmed and that the court's orders on summary judgment and everything else also should be affirmed. Questions? Thank you. Thank you. Mr. Wertheim? Thank you. Just in case you asked me a question about the withdrawal order, I went back and looked it up. It does say that the defendant withdraws all previously filed affirmative motions. Then it goes on to say, defendant shall have 28 days to replete his answer and or affirmative defenses. So essentially it does both. It does that and it also tells him he's got to replete within 28 days. Thank you. With respect to the summary judgment motion, we are aware that that's not contradicted by counter affidavits or admitted. We're talking now specifically of Ms. Zook's affidavit, which supported their motion for summary judgment. However, first the facts need to be established by admissible evidence. This comes a long way from fitting in with any requirement of admissible evidence. The plaintiff never established its capacity by admissible evidence. On the other hand, what the Basils did was establish that by the affidavits that we filed, plaintiff, Bank of America, is not the owner of the note or mortgage. And if you recall during my earlier argument, I pointed out where they admitted that in fact Fannie Mae was the owner at the time that they were moving for summary judgment. So in addition to whether or not we should have been allowed to file additional affirmative defenses after the motion for summary judgment had been granted, which has been briefed and I don't think we have enough time to really argue about that, and the affirmative defenses that we say were not withdrawn, and I believe the record shows that while permission was given we did not do that, we established by affidavit that Bank of America was not the owner of the note or the mortgage. And so there was sufficient evidence in front of the trial court at the time so that trial court could have in fact and should not have granted summary judgments. There's clearly a dispute about that. Was that the only affirmative defense that you submit that you supplied evidence in support of on the standing of Bank of America? That affidavit was by Mr. Moran where he pointed to the Fannie Mae lookup. That was the only evidence that we had at the time, but it was certainly sufficient. Plus, as I read to you earlier, Justice Schmidt, the admission by the attorney for Bank of America that Bank of America was not the owner, that they may have been the holder, but the owner was Fannie Mae, which was argued by Bank of America at the time of the motion for summary judgment. Did I address you? Yeah. Okay, thank you. And it's your contention that a holder can't bring an action? Oh, I have no doubt that a holder can bring an action, Your Honor. I think under our rules a holder can, but I believe that in 3N of the Mortgage Foreclosure Act you're supposed to set out which one you are. All they said was, well, we're a mortgagee according to the rules. Does that matter? I believe it does, Judge. It depends on how you go at it, because at some point if you're just a servicer, you've got to change and you've got to become an owner before you can actually take over and enter and have property. So, yeah, I think it does matter. But as Justice McDade said, when you bring one of these things, certainly you can bring it as a servicer, you can bring it as a note holder, you can bring it as a mortgage owner, many other different ways in which you can bring it. I think the idea, though, is if challenged, you need to set forth who you are so that everybody knows the circumstance in which you're proceeding. However, by the time you get to summary judgment and you're moving forward, then I think you have an obligation to prove up that you, in fact, are the owner of the note and you are the mortgage owner. Counselor, you have one minute. Thank you. And so you have that obligation. They did not go forward and meet that obligation. They said they're not the owner. Whether they're a holder or not, you know, apparently they – I was there. They did. They walked around with something that looked like a note and something that looked like a mortgage. You know, generally, if counsel's going to testify, they have to recuse themselves, get new counsel in, maybe from the same firm. But if they're going to do it, somebody's got to put them up on the stand so that they can talk about how they got that. I objected at the time. Walking around with a note and holding it is no different from my walking around with somebody else's baby and somebody thinking, well, that makes you the father? No, it doesn't. Did that answer your question? Thank you. Just so broad. Thank you very much. Thank you. We thank both of you for your arguments this morning. We'll take the matter under advisement and we'll issue a written decision as quickly as possible. The court will now stand in recess until 1.15.